# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

HAKEEM D. SMITH,

                :

        Petitioner,                       Case No. 3:06-cv-326

                        :          District Judge Thomas M. Rose

   -vs-                         Chief Magistrate Judge Michael R. Merz

WARDEN, Lebanon Correctional
 Institution,

                        :

        Respondent.

---

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

        This habeas corpus action is before the Court on Petitioner Hakeem Smith's Objections (Doc. No. 16) to the Magistrate Judge's Report and Recommendations ("R&R)(Doc. No. 14). The General Order of Reference for the Dayton location of court permits the Magistrate Judge to reconsider decisions or reports and recommendations when objections are filed.

        Petitioner pled five grounds for relief and the Magistrate Judge recommended that all of them be dismissed with prejudice. *Id*. Petitioner's makes nine separately numbered objections which are considered in order below.

### First Objection: Failure to Consider Additional Transcripts

        At Petitioner's request (Doc. Nos. 7 & 10), the Court ordered Respondent to file additional transcripts from the trial court (Doc. No. 11) and the Respondent did so (Doc. No. 13). The

Magistrate Judge did consider those transcripts in rendering the R&R.  Petitioner asserts in his Objections that he personally has not received a copy.  Assuming that is true, the Court has received copies and the matter contained therein does not impact the recommendations made.  In particular, the transcripts do not support Petitioner's argument that the fleeing and eluding charge against him was orally ordered dismissed with prejudice.  Even if such an oral order had been made, it would not have been effective without a written order to the same effect, and there is no such order.

## Second Objection: Speedy Trial Issue Not Procedurally Defaulted

Petitioner's first ground for relief was that his Sixth Amendment right to a speedy trial was violated.  This issue was raised and decided on direct appeal to the Second District Court of Appeals.  Petitioner failed to timely appeal from that decision to the Ohio Supreme Court.  Respondent therefore argued, and the Magistrate Judge agrees, that the issue was procedurally defaulted, relying on *Bonilla v. Hurley,* 370 F.3d 494 (6th Cir. 2004), which held that the 45-day time limit on appeal to Ohio Supreme Court is an adequate and independent state ground of decision.

Petitioner had relied on *Deitz v. Money*, 391 F.3d 802 (6th Cir. 2004), a case decided shortly after *Bonilla,* which concluded that Ohio App. R. 5(A) was not an independent and adequate state ground of decision.  Because the language in Ohio App. R. 5(A) is closely analogous to that in Ohio Sup. Ct. R. Prac. II(2)(A)(4)(a) which governs delayed appeals to the Ohio Supreme Court, Petitioner argued the later *Deitz* decision should be considered as overruling the prior *Bonilla* decision.  In the R&R, the Magistrate Judge noted that a later panel of the Sixth Circuit cannot overruled a prior panel's published decision and that *Bonilla* was directly in point because it and this

-2-

case both involved appeals to the Ohio Supreme Court.

In his Objections, Petitioner notes the roots of the rule on prior panel decisions in the doctrine of *stare decisis*, citing *United States v. Humphrey*, 287 F.3d 422 (6th Cir. 2002), and then argues at length that *stare decisis* is a discretionary doctrine, not an "inexorable command." (Objection, Doc. No. 16, at 3, quoting *United States v. IBM Corp.*, 517 U.S. 843 (1996)).

While *stare decisis* may not be an inexorable command when a court considers its own precedents, trial courts are obliged to follow precedent set by Supreme Court and Courts of Appeals. "Unless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be." *Hutto v. Davis*, 454 U.S. 370, 375, 102 S. Ct. 703, 70 L. Ed. 2d 556 (1982); *Litman v. Massachusetts Mut. Life Ins. Co.*, 825 F.2d 1506 (11th Cir. 1987). This Court was recently admonished by the Sixth Circuit for second-guessing a panel decision in the habeas corpus area. See *Lambert v. Warden*, 2003 WL 22071466 (6th Cir. 2003).

This Court has no authority to reconsider *Bonilla* in light of *Dietz*. Therefore the second objection is not well taken.

**Third Objection: Failure to Find Cause and Prejudice or Fundamental Miscarriage of Justice Excusing Procedural Default on the Speedy Trial Claim**

In his Third Objection, Petitioner notes that the Magistrate Judge did not deal with his argument that any procedural default on the speedy trial claim was excused by cause and prejudice or that not considering it on the merits would work a fundamental miscarriage of justice.

Petitioner is of course correct that the fourth stage of procedural default analysis under

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), requires the Court to decide if there is excusing cause and prejudice or if the Petitioner has made a sufficient showing of actual innocence to excuse the default.  However, attorney error cannot constitute cause where the error caused a petitioner to default in a proceeding in which he was not constitutionally entitled to counsel, e.g., a discretionary appeal or state post-conviction proceeding.  *Coleman v. Thompson*, 501 U.S. 722, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991).   "Attorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'"  *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1985), quoted in *Coleman v. Thompson*, 501 U.S. 722, 111 S. Ct. 2546, 115 L. Ed. 2d 640, 671 (1991). In addition, actual innocence means factual innocence as compared with legal innocence.  *Kuhlmann v. Wilson*, 477 U.S. 436, 454, 106 S. Ct. 2616, 91 L. Ed. 2d 364 (1986).

As cause to excuse his failure to timely file in the Ohio Supreme Court, Petitioner asserts that he met the standard for a delayed appeal in that court.

Ohio Sup. Ct. R. Prac. II(2)(A)(4)(a) provides that a motion for delayed appeal in the Ohio Supreme Court must be supported by a statement of "adequate reasons for the delay."  In support of the delayed appeal Motion in this case, Petitioner's appellate attorney, Kenneth G. Rush, averred that the Court of Appeals rendered its decision on November 15, 2003[1] (Exhibit F to Traverse, Doc. No. 8, at 3; hereinafter "Rush Affidavit").  That made the required filing date for the Notice of Appeal December 30, 2004.  The Notice of Appeal and Motion for Allowance of Delayed Filing were not filed in the Ohio Supreme Court until January 6, 2005, seven days later.  As his explanation

_____

[1]This is a typographical error; the Court of Appeals' Decision was filed November 15, 2004.

-4-

for the delay, Mr. Rush averred that

1.    He had filed a motion for reconsideration in the Court of Appeals which was delayed by reason of his travel to Pennsylvania for the Thanksgiving holiday.

2.    After returning from Pennsylvania, he consulted with Petitioner by mail to see if he wanted to appeal.

3.    He then prepared the required papers for appeal and forwarded them to Petitioner by mail on December 19, 2004.

4.    Petitioner did not receive the papers until December 23 because of Christmas mail.

5.    "A record snowstorm then stopped the mails until Monday the 27th from his place of incarceration."

6.    By this time Mr. Rush was in Milwaukee, Wisconsin, for a planned family Christmas gathering.

7.    "[For these reasons ]this attorney did not received the signed appellate papers in time for timely filing."

Rush Affidavit.

Petitioner is confined at the Lebanon Correctional Institution in Warren County, Ohio. Kenneth G. Rush has been an attorney at law for nearly fifty years, having been graduated from the Harvard Law School in 1957 (2006 Harvard Alumni Directory at 666). To this Court's knowledge, he has been practicing from Springfield, Ohio, at least since 1970 when the Magistrate Judge was himself admitted to practice. Mr. Rush's Affidavit does not claim that he did not know there was a forty-five day time limit on appeals to the Ohio Supreme Court. Nor does he claim that he believed a motion for reconsideration in the Court of Appeals would toll that time, as it does not.

The rush of Christmas mail is a common phenomenon and the court holidays of Thanksgiving, Christmas, and New Year fall during the same period every year.

Thus the only asserted unusual situation in November and December, 2004, was snowfall. While Mr. Rush does not quote any amounts or offer any sources, and presumably would not need to because the Ohio Supreme Court justices could rely on their own memories of a week or two earlier, this Court has been able to confirm that there was a heavy snowfall in Montgomery and Miami Counties – over twenty inches – on December 23-24, 2004.[2] What is not explained is why this two-day unusual snowfall should have prevented the filing of the necessary papers. The Rush Affidavit confirms that Mr. Rush traveled out of state to Wisconsin and Pennsylvania during the same period of time. If, as he must have known, there was a need to meet a deadline, why not travel with the papers from Springfield, Ohio, to Lebanon, Ohio, to get Petitioner's signature? That distance is less than 100 miles. Why not travel with the signed papers from Springfield to Columbus for filing? That distance is also less than 100 miles. Instead, Mr. Rush relied on the mail to (1) find out if Mr. Smith wanted to appeal, (2) send Mr. Smith the appeal papers, and (3) send the appeal papers to the Ohio Supreme Court. Of course, reliance on the United States Postal Service is usually prudent, but here it resulted in a filing fifty-two days after the Court of Appeals judgment rather than the forty-five required by the Rule.

Petitioner argues that if these are not adequate reasons for the delay, nothing could be. The Ohio Supreme Court, which had the same facts as are presented to this Court, could well have

_____

[2]Petitioner asserts that "a record snowfall resulted in the closing of all governmental offices and the cessation of the delivery service of the U.S. Mail" (Objections, Doc. No. 16, at 4). There is no record basis for this extreme assertion as to the severity of the weather or its effects.

decided that reliance on the mails was not prudent and therefore not a good excuse under the circumstances.  That decision was certainly not unreasonable.  State courts are not required by the federal Constitution to adjust their schedules to counsel's desire to travel during the holidays.

Turning to precedent, the Sixth Circuit has held that lack of counsel at the stage of appeal to the Ohio Supreme Court, lack of a trial transcript, unfamiliarity with the English language, and short time for legal research in prison do not establish cause to excuse failing to file in time in the Ohio Supreme Court.  *Bonilla*, citing *Murray v. Carrier,* 477 U.S. 478, 494-95, 91 L. Ed. 2d 397, 106 S. Ct. 2639 (1986). An even more compelling precedent is *Daniels v. Allen,* 344 U.S. 443 (1953).  There the United States Supreme Court refused to consider the merits of a habeas case because the statement of the case on appeal in the North Carolina Supreme Court had been served one day late.  Even though this was a capital case, the co-defendant was granted a writ on the merits, and the state's attorney received the statement as quickly as he would have if it had been sent by mail, the Supreme Court found the North Carolina Supreme Court's refusal based on untimely service was an adequate and independent state ground.

Petitioner here has not established excusing cause.  Nor has he shown actual innocence.  The portion of his Traverse dedicated to this point merely argues that he has viable claims to habeas relief, not that he is actually innocent of the crimes with which he was charged.  Actual innocence means factual innocence, not mere legal insufficiency.  *Bousley v. United States,* 523 U.S. 614, 118 S. Ct. 1604, 140 L. Ed. 2d 828, 840-41 (1998), citing *Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S. Ct. 2514, 120 L. Ed. 2d 269 (1992).  Petitioner claims that the State failed to prove "elements" necessary to increase his sentence sixfold.  But a habeas petitioner seeking to overcome procedural default by passing through the actual innocence "gateway" must himself come forward with new

evidence of innocence; he cannot rely on what he claims the State did not prove. See, e.g., *House v. Bell,* 547 U.S. ___, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006).

Petitioner objects that "the Magistrate relies upon a very unsettled doctrine of law regarding the requirement of the Court to appoint counsel to prosecute a 26(B) Application to reopen Direct Appeal" (Objection, Doc. No. 16, at 4-5). Not so. The law is clearly settled. In *Lopez v. Wilson*, 426 F.3d 339 (6th Cir. 2005)(*en banc*), the court expressly overruled *White v. Schotten* and held that 26(B) proceedings are collateral and defendants are not entitled to counsel for 26(B) proceedings.

The Third Objection is thus without merit.

### Fourth Objection: Failure to Find Petitioner Has Overcome the Presumption of Correctness in State Court Fact Finding

With respect to Petitioner's speedy trial claim, the Ohio Court of Appeals found that "virtually all of the delay in bringing this case to trial was caused by motions for continuance made by Petitioner or on his behalf" and the Magistrate Judge adopted this finding as required by 28 U.S.C. §2254(e)(1) which accords such findings a presumption of correctness (R&R, Doc. No. 14, at 5.) In his Objections, Petitioner makes conclusory allegations about how this finding is contrary to the state court record, but he offers no record references (Objections, Doc. No. 16, at 7). Instead, he incorporates by reference his Traverse (Doc. No. 8) which also contains no record references.

A general objection has the same effect as a failure to file altogether. *Howard v. Sec. of HHS,* 932 F.2d 505 (6th Cir. 1991). The reason is that failure to focus the district court's attention on any specific issues makes the initial reference useless and undermines the purpose of the Magistrate's Act. *Howard*, 932 F.2d at 509. "A district judge should not have to

-8-

guess what arguments an objecting party depends on when reviewing a magistrate's report." *Howard,* 932 F.2d at 509 (6th Cir. 1991) (quoting *Lockert v. Faulkner*, 843 F.2d 1015, 1019 (7th Cir. 1988) and citing *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989); and *Goney v. Clark*, 749 F.2d 5, 7 (3d Cir. 1984)).

Here Petitioner asks this federal habeas court to reverse a finding of fact by a state court without providing any record references upon which to base the reversal, either initially or in the Objections. This is insufficient under both the Magistrate's Act and the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA").

### Fifth Objection: Finding that Petitioner's Ineffective Assistance of Appellate Counsel Claim Is Procedurally Defaulted

Ohio has two mechanisms for a defendant to make claims of ineffective assistance of counsel at the court of appeals stage of direct appeal: a defendant may raise that claim on further direct appeal to the Ohio Supreme Court or he may raise the claim in an application to re-open the direct appeal in the Ohio Court of Appeals under Ohio App. R. 26(B). This Rule requires that the application to re-open be made within ninety days of final judgment or that, alternatively, good cause for the delay be shown.

Petitioner did not file his 26(B) Application until one year after final judgment in the Court of Appeals. On that basis, the Court of Appeals dismissed the Application as untimely, finding Mr. Smith had not shown good cause for the delay. The Magistrate Judge agreed and concluded the ineffective assistance of appellate counsel claim was procedurally defaulted.

Petitioner objects, first of all, that he "had pending a 60(B) Application that rendered the

26(B) timely. . ."(Objections, Doc. No. 16, at 7).  The Court of Appeals, however, held that Ohio R. Civ. P. 60(B) does not apply in the Ohio Courts of Appeals, which are governed by the Ohio Rules of Appellate, not Civil, Procedure.  Petitioner points to no law which conflicts with that holding.  Ohio R. Civ. P. 1 says that the Civil Rules do not apply on appeal.

Petitioner claims secondly that the Court of Appeals decision that transcripts are not necessary to file a 26(B) application is contrary to clearly established United States Supreme Court law.  However, the cases he cites all deal with the provision of transcripts to indigent defendants on direct appeal when courts of appeal require transcript references.  A 26(B) application is a collateral attack on the appellate judgment and not part of the direct appeal.  *Lopez v. Wilson, supra*; *Morgan v. Eads,* 104 Ohio St. 3d 142, 818 N.E. 2d 1157 (2004).  In any event, what is required to file a particular state action is a matter of state law on which the State is entitled to set its own requirements.

As an alternative basis for denying reopening, the Court of Appeals found that the claim of ineffective assistance of appellate counsel was barred by the Ohio doctrine of *res judicata* because the claim could have been raised on direct appeal to the Ohio Supreme Court (Opinion, Exhibit 22 to Return of Writ, Doc. No. 5, quoted in R&R at 8).  Petitioner asserts this conclusion is clearly erroneous because he did not actually appeal to the Ohio Supreme Court, he only attempted to unsuccessfully (Objections, Doc. No. 16, at 9). This objection is unavailing.  The fact that Petitioner did not successfully raise the claim does not mean he could not have done so had he filed in time.  For reasons given above, Petitioner has not adequately excused the failure to file on time in the Ohio Supreme Court.

The Fifth Objection is without merit.

**Sixth Objection: Reiterated Objection to Lack of Cause and Prejudice Analysis**

No further analysis is warranted on this objection.

**Seventh Objection: Adoption of the State Court of Appeals *Res Judicata* Decision**

For the reasons set forth above regarding the *res judicata* decision, no further analysis is required on this objection.

**Eighth Objection: Failure to Conclude that Raising Grounds Three, Four, and Five in the 26(B) Application Preserved Them From Default**

The Magistrate Judge concluded that Petitioner's third, fourth, and fifth grounds for relief were procedurally defaulted because they were raised for the first time in Petitioner's untimely Rule 26(B) Application (R&R, Doc. No. 14, 9-11).

Petitioner's position is that if a defendant raises a constitutional claim for the first time as an omitted assignment of error in a 26(B) application, even if that application is untimely, he preserved that claim for habeas corpus review on the merits, relying on *White v. Mitchell*, 431 F.3d 517 (6th Cir. 2005). This reliance is completely misplaced; the *White* decision does not address the proposition for which it is cited. The controlling law in this Circuit is *Lott v. Coyle,* 261 F.3d 594 (6th Cir. 2001).

**Ninth Objection: Recommendation of Dismissal**

In his Ninth Objection Petitioner argues that "[t]he Magistrate proposes to permit this proceeding to founder in a procedural morass" (Objections, Doc. No. 16, at 12), relying on *Harris*

-11-

*v. Nelson*, 394 U.S. 286 (1969).  In an encomium to the Great Writ, Justice Fortas wrote in *Harris* about its ability to cut through "barriers of form and procedural mazes."  *Id*. at 291.  As his citation to the case shows, Justice Fortas was writing during the era of *Fay v. Noia,* 372 U.S. 391 (1963), when habeas corpus was indeed much less burdened procedurally than it is today.  *Fay*, for example, refused to find procedural default unless a defendant had "deliberately bypassed" a state procedure for making his claim.

However, much has happened in federal habeas corpus jurisprudence since 1969.  *Fay* itself, for example, has been overruled.  *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977).  And of course in 1996 the Congress placed many additional procedural hurdles before the habeas petitioner in adopting the AEDPA, e.g., the statute of limitations, the ban on successive petitions, the required deference to state court decisions, and the strict limitation on evidentiary hearings.

In sum, the procedural details of habeas jurisprudence adopted by the Supreme Court and the Congress of the United States cannot be ignored because a petitioner (or even the Court) would prefer a procedurally simpler remedy.


### Conclusion


Having reconsidered the matter in light of the Objections, the Magistrate Judge again recommends that the Petition be dismissed with prejudice and Petitioner be denied the privilege of

appealing *in forma pauperis* and any requested certificate of appealability.

June 13, 2007.

s/ **Michael R. Merz**
Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).